UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:92-CR-114-BR-3

UNITED STATES OF AMERICA,

v.

LEROY ANGLOSON STUART,

Defendant

ORDER

This matter is before the court on defendant's motion for compassionate release. (DE # 128.)

In 1993, a jury found defendant guilty of conspiracy to commit armed bank robbery (Count I); armed bank robbery and aiding and abetting the same (Count II); and possession of a firearm during a crime of violence and aiding and abetting the same in violation of 18 U.S.C. §§ 2 and 924(c) (Count III). The court sentenced him to a total term of imprisonment of nearly 42 years. He unsuccessfully appealed his convictions and his sentence. See United States v. Stuart, No. 93-5465, 1994 WL 95796 (4th Cir. Mar. 18, 1994) (per curiam).

In September 2020, defendant filed the instant motion. The government filed a response in opposition, (DE # 131), to which defendant filed a reply, (DE # 134). Subsequently, defendant filed a notice of supplemental information in support of his motion. (DE # 135).

Defendant requests a reduction in his sentence of imprisonment to 154 months pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The Sentencing Commission has not issued a policy statement applicable to motions filed by defendants under this statute. United States v. McCoy, __ F.3d __, Nos. 20-6821, 20-6869, 20-6877, 2020 WL 7050097, at *1 (4th Cir. Dec. 2, 2020). "[A]s a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at *9 (citation omitted).

In deciding whether a sentence reduction is appropriate, the court must also consider the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A).

> These factors include: "(1) [Defendant's] personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants."

United States v. Adona, No. CR PX-17-345, 2020 WL 4338889, at *2 (D. Md. July 28, 2020) (citation omitted) (alteration in original).

Before addressing the merits of defendant's motion, it appears defendant exhausted his

2

administrative rights in the Bureau of Prisons ("BOP") prior to filing the motion. In April 2020, defendant submitted a request for compassionate release to the Warden, which the Warden denied a few days later. (Mot., Ex. 2, DE # 128-2; Resp., Ex. A, DE # 131-1.) The government acknowledges defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement. (See Resp., DE # 131, at 3.)

Turning to the merits, defendant contends the changes in § 924(c) sentences under the First Step Act of 2018 ("First Step Act"), his "wrongful" classification as a career offender at sentencing, and the threat COVID-19 poses to his health while incarcerated constitute extraordinary and compelling reasons to modify his sentence. (Mot., DE # 128, at 8.) The government argues that none of these grounds justify reducing defendant's sentence. (See Resp., DE # 131, at 1.) It further argues the § 3553(a) factors weigh against defendant's release. (Id. at 12-13.)

First, the court examines defendant's sentence and the relevant changes in the law. At sentencing, over defendant's objection, the court deemed him a career offender based on his prior convictions for the criminal sale of narcotic drugs (New York) and assault on a law enforcement officer (North Carolina). (See 6/7/93 Tr., DE # 78, at 6-9; PSR, DE # 77, ¶¶ 14, 16, 45.) As such, defendant's guideline imprisonment range for Counts I and II was 262 to 300 months. (PSR, DE # 77, ¶ 50.) The court sentenced defendant to the statutory maximum term of imprisonment on Count I, 60 months, and to the bottom of the guideline range on Count II, 262 months, all to run concurrently. On Count III, because defendant had previously pled guilty to a § 924(c) violation, the court was required to sentence him to a twenty-year consecutive term

3

of imprisonment.[1]  See 18 U.S.C. 924(c)(1) (1990) ("In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . . .  [T]he term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment . . . ."); Stuart, 1994 WL 95796, at *2 ("The twenty-year term applies to any qualifying prior *conviction*; a final judgment and sentence on that prior conviction is not required. . . .  In this case, the second conviction was unrelated and was obtained in the Middle District of North Carolina." (citations omitted)).  (See also PSR, DE # 77, ¶¶ 49, 50.)

Since that time, sentencing law has changed in several respects.  Importantly, the sentencing guidelines are now advisory.  United States v. Booker, 543 U.S. 220, 245 (2005).  Additionally, "[t]he First Step Act amended 18 U.S.C. § 924(c)(1)(C) such that the enhanced mandatory minimum penalty for a second or any subsequent § 924(c) conviction, . . . applies only when an offender's first conviction under § 924(c) was 'final' when the subsequent violation was committed."  United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. 2020) (citing First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221-22) (footnote omitted); see also McCoy, 2020 WL 7050097, at *2.  If this law had been in effect when defendant committed the offense in Count III, defendant's mandatory consecutive term of imprisonment would have been seven years—a difference of 13 years.  See 18 U.S.C. § 924(c)(1)(A)(ii) (2018) (providing a penalty of seven years imprisonment if the firearm is brandished).  (See also PSR, DE # 77,  ¶ 10 (stating that defendant brandished a weapon inside the bank); Mot., DE # 128, at 15 n.7 ("[I]t is likely that, today, the mandatory sentence required

---

[1] Prior to sentencing in this court, defendant pled guilty to armed bank robbery and violating § 924(c) in the Middle District of North Carolina.  United States v. Stuart, No. 2:92-CR-00223-CCE.  After sentencing here, that court sentenced him to 271 months imprisonment.

4

by § 924(c) would be seven years due to the firearms having been brandished during the robberies in these cases." (citation omitted)).) "But that change does not apply retroactively to sentences – like the defendant['s] – imposed before December 21, 2018, when the First Step Act became law." McCoy, 2020 WL 7050097, at *2 (citations omitted).

Finally, regarding defendant's sentence, it is unlikely his prior North Carolina conviction for assault on a law enforcement officer would qualify as a crime of violence to support application of the career offender enhancement. See United States v. Simmons, 917 F.3d 312, 315 (4th Cir. 2019) (holding that the North Carolina offense of "assault with a deadly weapon on a government official" is not categorically a crime of violence under the Sentencing Guidelines). If defendant had not been deemed a career offender, his guideline imprisonment range on Counts I and II would have been three times lower.[2]

The government does not dispute the fact that based on these changes in the sentencing law, if defendant were sentenced today, he would likely face a significantly shorter sentence. Rather, relying on Supreme Court precedent construing sentence reductions under a different subsection of § 3582(c) and the fact Congress chose not to make the change in § 924(c) retroactive, the government argues the court cannot "correct" defendant's § 924(c) sentence or "overturn" his career offender designation. (Resp., DE # 131, at 5-9.) The Fourth Circuit Court of Appeals has expressly rejected this argument in the context of the First Step Act's change in § 924(c) sentences. See McCoy, 2020 WL 7050097, at *11-12. It held a district court may "consider the First Step Act's declaration of the appropriate level of punishment under § 924(c) in assessing [a defendant's case], on an individualized basis, for compassionate release." Id. at

---

[2] Without the career offender designation, defendant's total offense level would have been 23 and his criminal history category would have been IV, (see PSR, DE # 77, ¶¶ 21, 44, 45), resulting in a guideline imprisonment range of 70 to 87 months, United States Sentencing Commission, Guidelines Manual, Ch. 5, Pt. A (Nov. 1992).

5

*1.

It is important to emphasize what the court is, and is not, doing.  Under § 3582(c)(1)(A), the court is not correcting a defendant's sentence or relitigating any aspect of it.  At the time of defendant's sentencing, the court correctly applied the applicable law.  That law has since changed.  The court may consider changes in sentencing law—even nonretroactive ones—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence.  See id. at *12.

The court also examines the other ground defendant raises: the COVID-19 pandemic combined with his health and incarceration.  "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, [district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility." United States v. Kibble, Criminal Action No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing United States v. Brady, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)).  The Centers for Disease Control and Prevention's ("CDC") list of risk factors for COVID-19 complications also informs the court's evaluation.  Everett v. United States, No. 4:16cr35, 2020 WL 5793428, at *3 (E.D. Va. Sept. 25, 2020).

Defendant's age, 56 years old, and hypertension, (see Mot., Ex. 3, DE # 128-3), potentially place him at a greater risk for severe illness from the virus that causes COVID-19, see CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 7, 2020); CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last

visited Dec. 7, 2020). At FCI Fort Dix, where defendant is incarcerated, the COVID-19 infection rate was high last week and appears to be decreasing. Compare United States v. Vega, No. 89-CR-0229-2(JS), 2020 WL 7060153, at *1 (E.D.N.Y. Dec. 2, 2020) ("[A]s of November 30, 2020, FCI Fort Dix is listed as having the highest number of positive COVID-19 cases among its inmates, with 303 inmates and 28 staff members listed as 'positive' for COVID-19 and 47 inmates and 6 staff members listed as 'recovered' from the virus." (citation omitted)); United States, v. Miles, No. CR ELH-13-0512, 2020 WL 6946597, at *2 (D. Md. Nov. 25, 2020) ("The defendant is incarcerated at FCI Fort Dix, which is currently experiencing a serious outbreak of COVID-19 cases." (citation omitted)); (Notice, DE # 135 (showing 214 inmates and 10 staff as positive for COVID-19 as of 5 November 2020)), with BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2020) (showing 103 inmates and 35 staff are positive for COVID-19 and 266 inmates and 6 staff have recovered). However, 406 inmates still have test results pending. BOP, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2020). With this large number of pending tests, the COVID-19 infection rate could very well still be high.

Considering the post-sentencing changes in the applicable statutory and case law combined with the potential impact of COVID-19 on defendant's health, the court concludes defendant has shown extraordinary and compelling reasons exist to reduce his sentence. Accordingly, the court considers the applicable § 3553(a) factors.

To be sure, the instant offenses as well the offenses defendant committed in the Middle District of North Carolina, which all occurred over the course of approximately two weeks and involved firearms, were very serious. At defendant's sentencing, the court recognized as much, but it also acknowledged the harshness of the term of imprisonment it was required to impose:

> I have heard [United States Attorney General Janet Reno] speak when I was in Washington and I came away with the impression that she feels something needs to be done about the mandatory minimum, and you know here it is the least that I can give this young man is 41 years and 10 months. He has committed a bad crime, and he has to go to prison, but there is no way that 41 years and 10 months is appropriate, but I have no choice. That's the bare minimum I can give.

(6/7/93 Tr., DE # 78, at 12-13.)

Defendant has been incarcerated more than 28 years. During that time, he has taken educational courses, obtained his GED, and maintained employment. (Mot., Ex. 4, DE # 128-4.) Although the BOP has sanctioned him for 11 prohibited acts, (Resp., Ex. C, DE # 131-3), defendant committed the last prohibited act more than nine years ago, (id.), and the BOP does "not consider[ him] to be a management concern," (Mot., Ex. 4, DE # 128-4, at 3). Upon release, defendant plans to reside in North Carolina with his wife and children. (Mot., Ex. 1, DE # 131-1, at 2.)

Considering all the circumstances, the court concludes reducing defendant's term of imprisonment to approximately 13 years would provide just punishment and reflect the seriousness of the offenses committed. Defendant's motion for compassionate release is ALLOWED. Defendant's sentence of imprisonment as reflected in the judgment dated 7 June 1993 is REDUCED to 70 months on Count II to run concurrently with the term in Count I and to 84 months on Count III, to run consecutively to the terms in Counts I and II, for a total term of 154 months. All other provisions of the 7 June 1993 judgment shall remain in effect. If this reduction in defendant's sentence would result in his immediate release from incarceration, the

BOP may delay defendant's release up to 14 days for quarantine and/or administrative reasons.

This 8 December 2020.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　W. Earl Britt
　　　　　　　　　　　　　　　　　　　　　　　Senior U.S. District Judge